Entered: August 6th, 2021
Signed: August 6th, 2021



DAVID E. RICE
U. S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| MICHAEL SCOTT JONES, | ) | Case No. 18-25698-DER |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| BLUEBELL BUSINESS LTD., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Adversary Pro. No. 19-00074-DER |
| | ) | |
| MICHAEL SCOTT JONES, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### **MEMORANDUM OPINION**

This is an adversary proceeding in which Bluebell Business Limited ("Bluebell") asks this court to deny entry of a discharge for Michael Scott Jones ("Jones") under § 727(a)(4)(A) of Title 11 of the United States Code (the "Bankruptcy Code"). The complaint alleges that Jones should be denied a discharge because he falsely stated under oath that (i) he lived at 10 E. Lee Street, Baltimore, Maryland on the date he filed his bankruptcy petition in this court, and (ii) he had not lived anywhere else during the prior three years. Bluebell asserts that Jones made those

false statements (a) with "fraudulent intent to conceal where he actually lives,"[1] and (b) because he "likely possesses property where he lives that he has not disclosed."[2]

Jones represents himself in this adversary proceeding.[3] A trial on the merits of Bluebell's complaint was held on June 16 and 17, 2021 by Zoom video conference due to the still ongoing COVID-19 pandemic. At the trial, six witnesses were called to testify, and more than 50 exhibits were introduced into evidence. Following the trial, the court held this matter under advisement. After due deliberation and consideration of the demeanor and credibility of the witnesses, the court is now prepared to rule on this matter. For the reasons explained below, Jones will be granted a discharge.

## Jurisdiction

The court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and Local Rule 402 of the United States District Court for the District of Maryland. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(J). This memorandum opinion constitutes the court's findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure (made applicable here by Rule 7052 of the Federal Rules of Bankruptcy Procedure).[4]

## Findings of Fact

Jones filed a Voluntary Petition (the "Petition") in this court on November 29, 2018 seeking relief under Chapter 7 of the Bankruptcy Code. *In re Michael Scott Jones*, Case No. 18-25698-DER, United States Bankruptcy Court for the District of Maryland (the "Main Case").

---

[1] Complaint Objecting to Discharge, Docket No. 1, Page 6 of 7, at ¶ 30.
[2] *Id.*, at ¶ 31.
[3] Jones was represented in this adversary proceeding by attorney Michael P. Coyle until his appearance was stricken by an order entered on January 23, 2020 [Docket No. 86].
[4] To the extent any finding of fact may constitute a conclusion of law, it is adopted as such. To the extent any conclusion of law may constitute a finding of fact, it is likewise adopted as such.

Jones is represented in the Main Case by attorney Michael P. Coyle. Marc H. Baer (the "Chapter 7 Trustee") was appointed and continues to serve as the trustee in the Main Case. Bluebell was listed as a creditor in the Schedules of Assets and Liabilities filed by Jones with his petition (the "Schedules").[5] In addition to listing Bluebell as a creditor in his Schedules, Jones indicated that notice should be given to its attorney Christopher J. Lyon—the same attorney who represents Bluebell in this adversary proceeding.[6]

The present dispute is but the most recent event in what has been a long course of litigation between these parties arising from an aircraft leasing transaction guaranteed by Jones. Bluebell obtained a default judgment in the amount of $430,371.56 against Jones in 2017 for breach of contract in a case filed in the United Kingdom.[7] Thereafter, Bluebell filed an action seeking recognition and enforcement of that judgment by the United States District Court for the District of Maryland (the "District Court Case").[8] After a discovery dispute in that action, the District Court ordered Jones and his brother, father, and mother to appear for deposition on November 30, 2018.[9] The deposition was stayed when Jones filed the Petition in this court on November 29, 2018.[10]

---

[5] Main Case Docket No. 1, Pages 8 to 30 of 45 [part of Plaintiff's Exhibit 13].
[6] Notice of the filing of the Petition was mailed to Christopher Lyon as Bluebell's attorney on December 2, 2018. Main Case Docket No. 10, Page 1 of 4.
[7] Order dated January 25, 2017 entered in *Bluebell Business Limited v. Michael Jones*, Case No. HQ16XO3208, by the High Court of Justice, Queen's Bench Division [Plaintiff's Exhibit 2].
[8] *Bluebell Business Limited v. Michael Jones*, Case No. 1:17-cv-02150-RDB, United States District Court for the District of Maryland. Christopher Lyon represents Bluebell in that action.
[9] Letter Order entered on November 19, 2017 by Judge Richard D. Bennett [Plaintiff's Exhibit 42].
[10] Bluebell was immediately notified of the filing of the Petition. In connection with other proceedings in the adversary proceeding, Jones submitted a copy of a letter sent to Judge Bennett by Christopher Lyon advising that court of the filing of the Petition and of the likely application of the automatic stay under § 362(a) of the Bankruptcy Code. Letter dated November 29, 2018 [Docket No. 153-2]. The automatic stay terminated as to Jones and his property on December 29, 2018 by reason of § 362(c)(3) of the Bankruptcy Code for the reasons explained in this court's Order Granting Motion to Alter or Amend Order Entered April 1, 2021 [Docket No. 211].

The Chapter 7 Trustee conducted the meeting of creditors on January 8, 2019 pursuant to § 341 of the Bankruptcy Code (the "Meeting of Creditors"), at which Jones was examined under oath by the Chapter 7 Trustee and creditors.[11] At the Meeting of Creditors, the Chapter 7 Trustee asked Jones if there had been a change in his home address since his Petition was filed. Jones indicated that there had been a change in his address and the Chapter 7 Trustee took down the current address off the record.[12] Jones also indicated in response to questioning by the Chapter 7 Trustee that he had lived in Maryland for more than two years before his Petition was filed.[13]

Bluebell did not appear at the Meeting of Creditors. The Chapter 7 Trustee filed a Report of No Distribution on January 31, 2019 in which he indicates that he has determined there are no assets for distribution to creditors and that administration of the bankruptcy estate is complete.[14] There is no evidence in the record that Bluebell or the Chapter 7 Trustee uncovered or identified the existence of any asset undisclosed and/or concealed by Jones—accordingly, the court finds that there was none.

The deadline in the Main Case for objection to discharge was March 11, 2019. Although a trustee has the power to do so under § 704(a)(6) of the Bankruptcy Code, the Chapter 7 Trustee chose not to object to the court granting a discharge to Jones. Bluebell filed a timely objection, however, and this litigation ensued.

Jones stated under oath in his Petition that he then lived at "10 E. Lee Street, Baltimore, MD 21202."[15] The Towers at Harbor Court Condominium ("Harbor Court") is located at that

---

[11] A transcript of the meeting of creditors was admitted into evidence as Plaintiff's Exhibit 46.
[12] *Id.*, at pp. 3-4.
[13] *Id.*, at p. 4.
[14] Main Case Docket No. 15.
[15] Main Case Docket No. 1, Page 2 of 45 [part of Plaintiff's Exhibit 13].

address. Jones lived in various units at Harbor Court for a period of years ending in or about 2005. Although a unit number was not stated on the Petition, Jones testified credibly that (i) he was an occasional occupant of Unit 1107 at Harbor Court during the period from November 1, 2018 through February 3, 2019, and (ii) he was living there on November 29, 2018 when he filed his Petition. Georgia Brust testified credibly that she was the owner of Unit 1107 at Harbor Court until February 3, 2019, and that on November 1, 2018 she gave Jones permission to occupy her unit.

Georgia Brust currently lives in Chicago, where she works as a Vice President for PNC Bank, N.A. She and her husband were acquainted with Jones and his family because they lived at Harbor Court in Unit 1107 from 1989 to 2002. On October 30, 2018, Georgia Brust executed a Key/Garage Access Release that authorized Harbor Court to release a key for Unit 1107 to Jones on November 1, 2018 (the "Key Release").[16] The court rejects Bluebell's assertion that the Key Release was fabricated after the fact. The court finds the explanation offered by Jones and Brust in their testimony to be credible. Regardless of how it may have happened, Jones had access to Unit 1107 from November 1, 2018 through February 3, 2019 and was in fact an occupant of that unit from time to time during that period. In making that finding, the court has considered the testimony of Laurie Carroll, Joseph Madison, and Kenya Reid Tyler, all of whom are longtime employees of Harbor Court. While the court does not doubt the truthfulness of these three witnesses, the court finds that they would not necessarily remember or have been in position to observe the presence of Jones at Harbor Court on the limited occasions when he stayed in Unit 1107.

---

[16] A copy of the Key Release was admitted into evidence as Plaintiff's Exhibit 48 and as Defendant's Exhibit A.

In his Statement of Financial Affairs (the "SOFA") filed with his Petition, Jones stated under oath that he had not lived at any other address during the prior three years.[17] That statement was not true. In his Amended Statement of Financial Affairs (the "Amended SOFA"), Jones stated under oath that he had lived at three address during various portions of the three years before he filed the Petition.[18] The three addresses were 103 Witherspoon Road, Baltimore, Maryland 21212 (the "Witherspoon Property"), 2808 Deerfield Road, Ellicott City, Maryland 21043 (the "Ellicott City Address"), and 1301 N. Dearborn Street, Chicago, Illinois 60610 (the "Chicago Address"). The statement in the Amended SOFA was incomplete and did not account for the entire three-year period.[19]

Jones and his brother purchased the Witherspoon Property in 2005. By reason of mortgage loan defaults, the Witherspoon Property was sold at foreclosure on September 5, 2018.[20] As a result, Jones surrendered possession of the Witherspoon Property at or about the time of the foreclosure sale and moved most of his personal property into storage. Jones is a single father who has custody of his minor son.[21] By reason of the foreclosure and his financial difficulties, Jones and his son were essentially homeless. For some time prior to the foreclosure sale, Jones relied upon friends and family to assist him with the care of his son and to provide them a place to live.

---

[17] SOFA, Question 2, Main Case Docket No. 1, Page 31 of 45 [part of Plaintiff's Exhibit 13].
[18] Amended SOFA, Question 2, Main Case Docket No. 21, Page 1 of 8 [Plaintiff's Exhibit 16].
[19] The relevant three-year period runs from November 29, 2015 through November 29, 2018. The answer to Question 2 in the Amended SOFA provides no address for 20 months of the 36 months in question.
[20] Motion for Relief from Automatic Stay to Complete Foreclosure Proceedings on Debtor's Unoccupied Property Known as 103 Witherspoon Road, Baltimore, Maryland 21212 [Main Case Docket No. 24]. Neither Jones, Bluebell, nor the Chapter 7 Trustee opposed that motion and the automatic stay was terminated by order entered on September 24, 2019 [Main Case Docket No. 30].
[21] The son's mother died in 2016. Jones receives a monthly Social Security payment of $695.00 for the son. According to Schedule I filed by Jones, his son was 4 years old at the time the Main Case was filed. Main Case Docket No. 1, Pages 27 and 28 of 45 [part of Plaintiff's Exhibit 13].

Jones' parents live at the Ellicott City Address.  Jones testified credibly that he stayed with his parents from time to time after the foreclosure and that they assisted him with the care of his son during the three-year period before the Petition was filed.  Georgia Brust and her husband live at the Chicago Address.  Jones testified credibly that he stayed with them from time to time when he traveled to Chicago for work.

The Amended SOFA was filed after Bluebell filed its complaint that asserted the statements in the Petition and SOFA were false.  The Petition, SOFA, and Amended SOFA were each filed on behalf of Jones by his attorney Michael P. Coyle.  Jones testified credibly that he provided all his address information to Michael Coyle and that he relied upon Michael Coyle to complete the Petition, the SOFA, and the Amended SOFA.  It is not clear from the testimony when Jones provided his current and prior three years of address information to Michael Coyle.  It is clear, however, that Jones was concerned about providing accurate address information and intended to disclose it fully.

Bluebell called Michael Coyle as a witness at trial.  The court held that Jones had waived the attorney-client privilege as to his statements in the Petition, SOFA, and Amended SOFA about where he lived.  Michael Coyle admitted that he was tardy in filing the Amended SOFA.  Jones provided the information Michael Coyle used to complete the Amended SOFA.  During a large part of the three years in question, Jones was a single father with transient living arrangements necessitated by his financial circumstances and the need to care for his young son.  To the extent the Amended SOFA was still incomplete as to where Jones lived during the three years prior to the filing of his Petition, the Court finds that Jones did not intend to deceive or mislead either the Chapter 7 Trustee or his creditors as to where he lived or where his assets were located.

The Court rejects Bluebell's contention that various supposed discrepancies in address information provided by Jones at various points in time suggest that he intended to conceal his place of residence for the purpose of preventing the discovery of valuable assets by creditors or the Chapter 7 Trustee. For example, Bluebell points to Notices of Incorrect or Insufficient Address entered by the Clerk of this Court.[22] These notices are issued by the Clerk based upon notification from the Bankruptcy Noticing Center—they are not an indication that the Clerk or the Court has determined that in fact mail was returned as undeliverable because it was not properly addressed.[23]

Similarly, Bluebell points out that the Answer filed by Jones admits the allegations made by Bluebell in paragraph 13 of the Complaint. That admission is not evidence that Jones was concealing his place of residence. During a conference call on November 19, 2018 related to the District Court Case, Judge Bennett asked Jones where he was currently living, and Jones stated that he was moving to Chicago. When questioned further by Judge Bennett, Jones stated that he was staying temporarily at 6550 Adventure Way in Orlando, Florida, which is the address for Universal's Cabana Bay Beach Resort. Jones testified credibly that at the time he was in Florida with his son for a vacation trip to Disney World. What all these supposed discrepancies demonstrate is that Jones was a single father whose living arrangements were tenuous given his financial circumstances and the need to care for his son.

---

[22] Plaintiff's Exhibits No. 15, 18, 22, 30, and 31.
[23] Jones currently resides in Nicaragua. The Court finds that the Bankruptcy Noticing Center is apparently either unable to, or has difficulty sending, court notices and pleadings to his address outside the United States because the docket is replete with notices of undeliverable mail to Jones. At the Court's direction, the clerk's office currently serves court orders upon Jones via electronic notice at an email address he provided. See, Docket No. 219. Moreover, Jones testified credibly that during the COVID-19 pandemic Nicaragua often did not deliver mail arriving from outside the country.

**Conclusions of Law**

Denial of a debtor's discharge is a serious matter. As many courts have observed, a discharge should not be denied to an honest debtor merely because of oversight, inadvertence, or mistake on the part of the debtor. *Standiferd v. United States Trustee (In re Standiferd)*, 641 F.3d 1209, 1212 (10th Cir. 2011) ("the opportunity for 'a completely unencumbered new beginning' is reserved only for 'the honest but unfortunate debtor.'") (quoting *Grogan v. Garner*, 498 U.S. 279, 286–287 (1991)); *United States Trustee v. Sieber (In re Sieber)*, 489 B.R. 531, 554 (Bankr. D. Md. 2013) ("'A debtor will not be denied discharge if a false statement is due to mere mistake or inadvertence.'") (citing *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1294–95 (10th Cir. 1997)); *see also Friendly Fin. Disc. Corp. v. Jones (In re Jones)*, 490 F.2d 452, 456 (5th Cir. 1974) ("the reasons for denying discharge to a bankrupt must be real and substantial, not merely technical or conjectural.") (citing *In re Pioch*, 235 F.2d 903, 905 (3d Cir. 1956)).

In evaluating an objection to a debtor's discharge, § 727 is construed liberally in favor of debtors and strictly against the objecting party. *Cho v. Park (In re Park)*, 480 B.R. 627, 631–32 (Bankr. D. Md. 2012) (citing *In re Beauchamp*, 236 B.R. 727, 730 (9th Cir. BAP 1999)); *Lafarge North Am., Inc. v. Poffenberger (In re Poffenberger)*, 471 B.R. 807, 815 (Bankr. D. Md. 2012) (citing *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996)).

The objecting party carries the burden of showing by a preponderance of the evidence that the debtor is not entitled to a discharge. *Farouki v. Emirates Bank Int'l., Ltd.*, 14 F.3d 244, 249 (4th Cir. 1994). The burden may shift to the debtor to provide satisfactory, explanatory evidence if the objecting party presents a prima facie case, but the ultimate burden of proof always rests on the objecting party. *Id*. *See also Poffenberger*, 471 B.R. at 819 (explaining that

the burden shifts to the debtor to come forward with evidence he has not committed the alleged offense once it appears that the statement under oath was false).

As applicable here, § 727(a) provides in relevant part as follows:

> The court shall not grant the debtor a discharge, unless … the debtor knowingly and fraudulently, in or in connection with the case … made a false oath or account ….

11 U.S.C. § 727(a)(4)(A). In order to prevail on an objection to discharge under § 727(a)(4)(A), the objecting party must prove by a preponderance of the evidence that (i) the debtor "made a statement under oath which he knew to be false," (ii) the debtor "made the statement willfully, with the intent to defraud," and (iii) the statement "must have related to a material matter." *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251 (4th Cir. 1987). "The purpose of § 727(a)(4) is 'to insure that debtor provides reliable information to those with an interest in the administration of the debtor's estate.'" *Schlossberg v. Abell (In re Abell)*, 549 B.R. 631, 675 (Bankr. D. Md. 2016) (quoting *Nerco Coal Corp. v. Ball*, 84 B.R. 410, 415 (Bankr. D. Md. 1988)).

Although direct evidence of the intent of the debtor is unlikely to be found by the party objecting to a debtor's discharge and a debtor is unlikely to admit acting with fraudulent intent, the court may infer such intent from the facts and circumstances of the case. As the court explained in *Cho v. Park*,

> The essential point is that there must be something about the adduced facts and circumstances which suggest that the debtor intended to defraud creditors or the estate. For instance, multiple omissions of material assets or information may well support an *inference of fraud* if the nature of the assets or transactions suggests that the debtor was aware of them at the time of preparing the schedules and that there was something about the assets or transactions which, because of their size or nature, a debtor might want to conceal.

480 B.R. at 637 (quoting *In re Khalil*, 379 B.R. 163, 175 (9th Cir. BAP 2007), aff'd 578 F.3d 1167 (9th Cir. 2009)) (emphasis in original).  As the court noted in *Poffenberger*, the circumstantial evidence that supports an inference of fraudulent intent can be found in a course of conduct, a pattern of concealment and nondisclosure, or a reckless indifference to the truth. 471 B.R. at 819 (citing *Hatton v. Spencer (In re Hatton)*, 204 B.R. 477, 483-484 (E.D. Va. 1997)).  Lastly, a false oath is material "'if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'"  *Williamson*, 828 F.2d at 252 (quoting *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984)).

With these general principles in mind, the court turns to consideration of the application of § 727(a) to the circumstances of this case.  The court concludes that Bluebell has not met its burden and that Jones should be granted a discharge.  Simply stated, the Court finds that the evidence and the circumstances of this case do not suggest that Jones intended to defraud his creditors or his estate.  All evidence presented at trial points to Jones being a classic example of an "honest but unfortunate debtor."  As a single father whose child's mother had died, Jones found himself essentially homeless once the Witherspoon Property was foreclosed upon. Generally, debtors who have the means to save their home do so.  Here, the evidence shows that as of September of 2018 there was no hidden hoard of cash or other personal property that Jones could tap to save his home.

Georgia Brust's testimony confirmed that from November 1, 2018 through February 3, 2019 Jones had access to and had been staying from time to time at the Harbor Court address listed by Jones on his Petition.  The Petition was filed during that window on November 29, 2018.  At the Meeting of Creditors on January 8, 2019, Jones gave the Chapter 7 Trustee

information off record about updating his address and his attorney, Michael Coyle, who was called by Bluebell, admitted that any delay in updating Jones' address was his own. There is simply no evidence that Jones was attempting to hide or falsify his address during his bankruptcy—he simply didn't have permanent living arrangements and did his best to keep his address up to date.

More importantly, there is no evidence that Jones has any assets hidden at an undisclosed address. Neither the Chapter 7 Trustee nor Bluebell found, or brought forth any evidence of, hidden property or assets. As such, the Court finds that there was no false statement made by Jones with the intent to defraud. Jones being mistaken or tardy about his address had no material impact on the outcome of his chapter 7 case. Jones led a transient existence by reason of the death of his son's mother. Being a transient, however, simply does not equate to being fraudulent as Bluebell has alleged. In sum, the Court finds that Jones has satisfactorily explained any statements made in the Petition, SOFA, and Amended SOFA that were false or incomplete.

## Conclusion

For the above reasons, this court concludes that Bluebell has not proven by a preponderance of the evidence that § 727(a)(4)(A) of the Bankruptcy Code bars the court from granting Jones a discharge. Accordingly, an order granting Jones a discharge should be entered in the Main Case. A separate order consistent with this Memorandum Opinion will be entered herein by the court.

cc:     All Parties in Interest

      Michael S. Jones
      dearmikejones@protonmail.com
      mikebroadband@gmail.com

-- END OF OPINION –